UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
SITTING IN JOHNSTOWN

Case No. __3:17-cv-161__
**CLASS ACTION**
**And ERISA COMPLAINT**

ANTHONY PATCHELL, on his own
Behalf and on behalf of all others similarly
situated, and AMANDA PATCHELL, His Wife,

        Plaintiffs,

           v.

CIGNA HEALTH AND LIFE
INSURANCE COMPANY and LIFE
INSURANCE COMPANY OF AMERICA, and
DISABILITY MANAGEMENT SOLUTIONS,

        Defendants.

Plaintiff Anthony Patchell ("Plaintiff"), complains as follows on his own behalf and on

behalf of all others similarly situated, against Defendants Cigna, LINA and Disability

Management Solutions ("Defendants").

INTRODUCTION

1.  On January 20, 2016, the U.S. Supreme Court circulated *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan* (577 U.S. ___ (2016)) wherein an ERISA benefit plan (such as Defendants at Bar) cannot enforce an equitable right to reimbursement for costs against a plan participant's (such as Plaintiffs') general assets when the plaintiff(s) spent his or their settlement on "non-traceable" items.

2.  The U.S. Supreme Court reiterated its position from a previous line of cases including *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, (2002); *Sereboff* v. *Mid Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006) and *US Airways, Inc.* v. *McCutchen*, 569 U.S. ___, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013).

3.  Enforcement of an equitable lien by agreement on a third-party settlement (e.g., pursuant to a subrogation clause in an ERISA-covered plan) is an equitable claim by an ERISA plan fiduciary under ERISA Section 502(a)(3).

4.  The underlying nature of the remedy sought by National Elevator's Board of Trustees—enforcement of an equitable lien against Montanile's general assets—was not equitable in nature and, therefore, was not appropriate equitable relief permitted under ERISA Section 502(a)(3). This means that if Montanile did, in fact, spend the settlement funds on "nontraceable items (like food or travel)," the equitable lien was

2

destroyed and the Board of Trustees could no longer seek recovery under ERISA; and
that in any event, inquiry must be held on traceability, *inter alia.*

5.  Plaintiff is an American soldier whom served in Bosnia and Iraq. Following
    involuntary medical separation from the service, Plaintiff became an Intelligence
    Analyst with Oberon, predecessor to Stanley, a private sector defense contractor.

6.  Oberon provided a disability policy through Defendants to which Stanley was
    successor.

7.  Plaintiff became disabled on February 6, 2010 as a consequence of failed back
    syndrome, *inter alia.* He had a hemi-laminectomy with decompression of his L5-S1
    lumbar spine and fusion of the L5-S1 vertebrae. He had metal plates and rods
    permanently affixed to his spine for support.

8.  Plaintiff also has a constellation of physical and non-physical maladies as a
    consequence of multiple IED explosions, including traumatic brain injury sustained
    while in the military services, and aggravations and/or re-activations thereto Please
    see Appendices authored by Drs. Fried and Ivker).

9.  Plaintiff Anthony Patchell has three children from two prior marriages who live in
    Arizona and Pennsylvania with their Mothers.

10. Cigna owns LINA. The instant insurance policy originated as a group benefit to all Stanley *qua* Oberon employees.

11. The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.*, and is administered by Defendants Cigna and/or Disability Management Solutions.

12. Plaintiff was adjudicated totally disabled for Social Security purposes by Opinion and Order of Chief Judge Graffius, sitting in Altoona, retroactive to February 6, 2010.

13. Plaintiff's adjudicated disability is conditioned upon several severe impairments including Failed back syndrome status post L5-S1 laminectomy with radiculopathy, spinal stenosis and Traumatic Brain Injury, Cognitive Disorder, Status post-multiple Head Injuries, Migraines, PTSD, and various lesser orthopedic and psychological injuries.

14. Plaintiff is considered disabled by virtue of multiple service-connected disabilities, reoccurrences and aggravations according to the U.S. Veterans' Administration.

15. Plaintiff's Cigna short-term disability (STD) payments to Plaintiff were initiated late and then unilaterally suspended after six weeks by Defendants.

16. Plaintiff, utilizing authoring counsel, appealed and eventually prevailed in having STD restored.

17. Plaintiffs' disability income benefit rate is $4513.00 per month, resulting in a monthly check in the amount of $2868.00.

18. Of the said $2868.00 monthly benefit, $1721.40 went to Plaintiff and $1147.60 to his counsel as an Attorney's fee.

19. All monies to Plaintiff and his counsel were suspended on or about January 7, 2016 and Defendants thereafter credited Plaintiff with a $2047.00 overpayment deduction per month up to and including the present time; never explaining the difference between the $2868.00 LTD rate and the lower $2047.00 suspension credit.  Plaintiff sustained a post-Montanile self-executing contractual clawback of (Viz:  20 months x $2868 per mo. = $57,360.00).

20. By the time Plaintiff had his STD restored, he should have been receiving benefits that converted into Long Term Disability (LTD) after two years by terms of the plan.

21. Plaintiff received STD benefits after the two-year window only because Defendants refused to pay his disability benefits when due.

22. Cigna converted STD but would later stop all benefits, including LTD, on the premise that Plaintiff might be disabled from his prior job, but he was not disabled from any job (the Old occupation/Any occupation inquiry);  despite the findings of the Social Security Administration which had already found Plaintiff to be totally disabled from any job.

23. Defendants later characterized its retroactive payments as requiring an offset to the extent of SSA Dependents' benefits received by Plaintiff's three children.

24. Defendants knew of should have known about the children's SSA payments long before Defendants requested clawback because Plaintiff disclosed that information on Defendants' questionnaire before STD flowed.  Defendants created the need for clawback by its inattentiveness.

25. On or about January 3, 2016, Defendant(s) again stopped the flow of disability monies to Plaintiff Mr. Patchell and converted 100% of Plaintiff's disability insurance monthly income to its / their own possession and use.

THE PARTIES

26. Plaintiff resided in Altoona, Blair County, Pennsylvania when this action accrued.
He has since moved to the state of Michigan where he resides with his wife, Amanda,
at 1067 E. Beard Road, Perry, MI 48872.

27. Defendants CIGNA and LINA maintain business operations at 1600 W. Carson
Street, Pittsburgh, PA 15219.

28. Disability Management Services is a Dallas-based contractor providing administrative
services to CIGNA and LINA, using an address of P.O. Box 709015, Dallas, TX
75370 - 9015.

29. CIGNA is the fourth-largest health insurer in the United States, with more than 11
million participants.  LINA is a CIGNA subsidiary obtained via corporate merger.

30. Cigna, LINA, or Disability Management Solutions by its Administrator, or by itself,
is an Employee LTD provider, Insurer, and Fiduciary fund within the meaning of
Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

## JURISDICTION AND VENUE

31. Federal Question Jurisdiction lay by virtue of the ERISA statute found at Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the federal common law of ERISA.

32. Statutes Implicated include the ERISA statute, *supra* and the U.S. Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715.

33. This court has jurisdiction under Sections 501(a), and 502(e) of ERISA, or also under the Class Action Fairness Act of 2005, 28 U.S.C. S. 1332(d).

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

34. Plaintiff is a Bosnia and Iraq veteran with the rank of Sergeant First Class whom operated as a Ground Surveillance Systems operator. He separated from the service and took employment with Department of Defense intelligence contractor Oberon, predecessor to Stanley, Inc. performing jobs entitled, "Mobile Instructor", "Manual Writer" and "Intelligence Analyst for Future Operations".

35. He files the following Complaint which his wife, Amanda, joins and amplifies via a loss of consortium count:

36. This action arises under Section 502(a)(1)(B), 502(a)(2), and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S. C. § 1132; 29 C.F.R. Sec. 2650.503-1 *et seq*., and the federal common law of ERISA, for return of his monthly LTD benefit payments including Dependents' Social Security Disability, Attorney Fees, interest thereon, and such other relief as this Court may direct.

37. Claims by plans or their fiduciaries to recover payments made to participants are inhibited by the strictures of ERISA's civil enforcement scheme. The only recognized avenue for recovery, ERISA § 502(a)(3), limits Defendants' possible recovery to equitable relief, i.e. contractual relief is not available.

38. Defendants usurped the power of Courts sitting in Equity in violation of the U.S. Supreme Court's holding in *Montanile v. Board of Trustees of National Elevator*, 577 U.S. ___ (January 20, 2016) when it engaged in unilateral self-help enforcement of contract.

39. DMS has a self-serving motive to uphold Cigna's and LINA's policies and coverage denials made pursuant to those policies, since Cigna or LINA or both decide whether to continue to hire DMS to review or administer a volume of appeals.

40. DMS operates with a conflict of interest when it administers or reviews Defendants' assignments.

41. Plaintiff has exhausted internal remedies and has successfully fought suspensions following (1) expiration of STD and also two (2) previous occupation/any occupation conversion periods to LTD, taking two appeals.  Plaintiff has prevailed, asked for Attorney Fees and been denied.

42. Defendant(s,) as the entity that administers the plan, both determine whether an employee is eligible for benefits and pays benefits out of its own pocket. That dual role creates a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. (2008).

43. Despite Plaintiffs' prevailing with the resumption of LTD benefits, Defendants confiscated 100% of Plaintiffs' benefits contemporaneous to the *Montanile* Decision being handed down by the US Supreme Court on January 20, 2016 extending the theory to an equitable lien overpayment clawback of Plaintiff's Dependent Children's social security benefits.

44. Defendants did not inquire as to traceable assets, the nature of the dependents' reliance on payments, proportion of Attorney's contingent fees, or any other factors of any sort whatsoever before converting Plaintiffs' money to its own use.

Defendants also refused to discuss less onerous terms of clawback repayment than 100% confiscation.

45. As ERISA fiduciaries, Defendants were required to discharge their duties consistent with 29 U.S.C. Section 1104, which requires (among other things) that they do so "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan.

46. Defendants failed to discharge their duties to Plaintiff with "care, skill, prudence, and diligence" in accordance with the terms of the plan it or they administer(s).

47. Plaintiffs have largely dissipated payments already paid to them;

48. All monies confiscated by Defendants represented future disability payments and were never money "in-hand."


COUNT I

On behalf of Anthony Patchell and Amanda Patchell.

ERISA Sec. 502, for the plan, to recover overpayments for breach of fiduciary duty

49. Plaintiffs incorporate allegations 1-48 inclusive, above, as if fully set forth.

50. Defendants violated each of the following ERISA requirements, for which relief is now sought:

A.  Not paying Short term disability on time;

B.  Not paying Long term disability on time;

C.  Failure to pay interest on past-due benefits;

D.  Not reimbursing Plaintiff for expert witnesses when adverse internal decisions were then reversed;

E.  Refusing to pay attorney's fees in contested cases where plaintiff prevailed as per *Hardt v. Reliance Standard Ins. Co.*, 560 U.S. ___ (2010);

F.  Not asserting overpayments at an early opportunity despite Plaintiff's correct and timely forms completion of Social Security Disclosure and Dependents' verification;

G.  Confiscating funds representing Children's Social Security payments to satisfy Father's alleged overpayments;

H.  Confiscating said overpayments in a manner contrary to 42 U.S.C. § 407(a), relating to Dependent clawbacks;

I.  Self-dealing, i.e., through conflict of interest or reaping of extra profits;

J.  Misuse of superior or influential position;

K.  Failure to act in a participant or beneficiary's best interest;

L.  Neglect, imprudence, or want of skill in administering benefits including failing to realize its mistake and compounding same;

M.  Misappropriation of Plaintiffs' future funds;

N.  Conversion of funds or property;

O.  Failure of the duty of loyalty to Plaintiffs;

P.  Failing to operate in good faith by flatly refusing a partial payback schedule;

Q.  Exploiting a conflict of interest;

R.  Offsetting 100% of future monthly ERISA disability payments;

S.  Improper administration of the plan;

T.  Breach of trust;

U. Breach of the prudent person standard;

V. Deriving illicit profits from a breach of loyalty;

W. Refusing to supply to Plaintiffs' counsel the requested master file information where there was a dual role conflict of interest;

X. Administrator's continued refusal to supply requested documents relied upon during the initial denial of STD and then first and second denials of LTD;

Y. Failing to hold a *Montanile* Hearing before confiscating Plaintiffs' future monies; and

Z. Retaliating against Plaintiffs for exercising his ERISA rights.

51.     Defendant's fiduciary breach(es) proximately caused Plaintiffs' harm.

## COUNT II

On behalf of Plaintiff and all other similarly situated beneficiaries of LINA, Cigna or DMS-administered STD or LTD plans.

52. Plaintiffs incorporate allegations 49-51 inclusive, above, as if fully set forth.

53. During its Wall Street Investor Day, Cigna officials reaffirmed projected full year 2017 consolidated adjusted income from operations in the range of $2.41 billion to $2.53 billion.

54. Plaintiff Anthony Patchell brings his claims on his own behalf and on behalf of a "Montanile Clawback Class," defined as:

55. Any or all participants or beneficiaries in ERISA Plans underwritten or administered by Defendant Cigna or any of its operating divisions including LINA who, between January 21, 2016 and the present time, took an offset against any plan beneficiary; and

56. All participants or beneficiaries in ERISA Plans underwritten or administered by Defendant Cigna or any of its operating divisions including LINA which, between January 21, 2016 and the present time, denied any beneficiary a *Montanile* hearing.

57. The Patchell montanile Classes meet all requirements of F. R. Civ. P. 23(a) and 23(b).

58. The members of the Class are so numerous that joinder of all members is impractical.

59. While the precise number of members in this Class is known only to

Defendants, Cigna and LINA are ERISA fiduciaries and have issued the policies providing coverage under tens of thousands of employer-sponsored ERISA plans.

60. The identities of the class members are readily identifiable by Defendants, which maintain claims databases that record each instance in which it denies coverage for beneficiaries.

61. Accordingly, the members of the Classes can be readily and objectively ascertained through use of records maintained by Defendants.

62. There exist issues of fact and law common to all members of this class, the most obvious and important of which is whether Defendants engaged in an impermissible equitable clawback action in violation of *Montanile*.

63. The facts that determine the answer to this question do not vary among class members.

64. Plaintiffs' claims are typical of the claims of the Class members because Defendants based their denial of coverage in Plaintiff's case on a claims administration policy that Cigna and/or LINA employs universally.

65. Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained competent counsel, and has no interests antagonistic to, or in conflict with those of other Class members.

66. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendant.

67. Defendants have acted and refused to act on grounds that apply generally to the Classes.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Classes is impracticable.

69. Further, because the unpaid benefits denied Class members are small relative to the expense and burden of individual litigation, it would be impossible for Class members to individually litigate the common legal question.

70. Defendants violated its/their duties by adopting and implementing a policy to clawback monies to which it was not entitled or which were beyond its reach without a legal inquiry and finding of traceability per *Montanile*.

71. Defendants commonly ignored the pronouncement of the U.S. Supreme Court interpreting Defendants' duties under ERISA law.

72. In doing so, Defendants did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits."

73. Defendants did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity.

74. Instead, Defendants elevated their own interests and those of their corporate affiliate(s) above the interests of plan participants or beneficiaries.

75. By adhering to an incorrect and outdated policy in denying a *Montanile* hearing, Defendants artificially decreased the number and value of covered claims, thereby benefiting its corporate affiliates at the expense of its insureds, participants or beneficiaries.

76. By improperly clawing back monies which it was not lawfully entitled to reach, Defendants artificially decreased the number and/or value of covered claims thereby benefiting itself and/or its corporate co-conspirators.

77. Plaintiffs and the members of the Classes have been harmed by breaches of fiduciary duty of Cigna, LINA and DMS because their claims have been subjected improperly

to the clawback, leaving participants and beneficiaries moneyless when they had an expectation of continued disability insurance protection.

78. Plaintiffs and members of the Class seek relief identified below to remedy this claim.


## COUNT III

79. Plaintiff incorporates by reference paragraphs 52 – 78 as though fully stated herein.

80. This count is brought pursuant to 29 U.S.C. §1132(a)(I)(B).

81. Plaintiff and the members of the Class have been harmed by Defendants' improper benefit denials because they were deprived of insurance benefits they were owed.

82. Plaintiff and the members of the Class seek the relief identified below to remedy this claim.


## COUNT IV

83. Plaintiff incorporates by reference paragraphs 79 – 82 as though fully stated herein.

84. This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy Counts I, II or III are unavailable pursuant to 29 U.S.C. § 1132(a)(l)(B).

85. Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by the breaches of fiduciary duty Defendants as described hereinabove.

86. In order to remedy these harms, Plaintiff and the Class are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

COUNT V

Anthony Patchell, for himself and the Class, seeking other available relief.

87. Plaintiff incorporates by reference paragraphs 83 – 86 as though fully stated herein.

88. This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent that the Court finds that the equitable relief sought to remedy Counts I and II are unavailable pursuant to 29 U.S.C. § 1132(a)(l)(B).

89. Plaintiff and the Class have been harmed, and are likely to be harmed in the future, by the breaches of fiduciary duties of Defendants described above

90. In order to remedy these harms, Plaintiff and the Class are entitled to appropriate equitable relief, including an appropriate monetary award based on restitution, disgorgement or surcharge, pursuant to 29 U.S.C. § 1132(a)(3)(B).

91. One or more reasons exist for this Court to express an equitable remedy in Mr. Patchell's personal suit under 502 against CIGNA, LINA and DMS:

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in his/their favor against Defendants as follows:

A. Certify the Classes, as set forth in this Complaint, and appoint Plaintiff as Class Representative;

B. Declare that Cigna, LINA and/or DMS violated the ERISA Plan, and award appropriate retrospective and current benefits;

C. Order Cigna and its co-actors to make payment, with interest, of unpaid benefits to Plaintiff and all Class members;

D. Permanently enjoin Defendants from denying participants *Montanile* hearings;

E. Declare that Defendants violated the rights of Plaintiff and

the other members of the Class;

F. Declare that Defendants violated fiduciary duties under ERISA, and award

appropriate equitable relief including disgorgement and surcharge;

G. Award Plaintiff disbursements and expenses of this action, including

reasonable attorneys' fees, in amounts to be determined by the Court; and

H. Grant such other and further relief as is just and proper.

Respectfully submitted,

08/22/2017

Terrence A. Valko, Esq.
PA Supreme Ct. No. 43921
616 1st Ave.
Altoona, PA 16602
814 944-8275
terryvalko@yahoo.com