IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY PATCHELL, *on his own behalf and on behalf of all others similarly situated*, and AMANDA PATCHELL, *his wife*, <br><br> Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, and LIFE INSURANCE COMPANY OF AMERICA, <br><br> Defendants. | Case No. 3:17-cv-161 <br><br> JUDGE KIM R. GIBSON |

## MEMORANDUM OPINION

I. Introduction

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended "Class Action and ERISA Complaint." (ECF No. 27.) Although Plaintiffs have not responded to Defendants' Motion to Dismiss (ECF No. 27) or Memorandum of Law in Support thereof (ECF No. 28), the deadline for Plaintiffs' response—March 2, 2018—has passed and, thus, Defendants' Motion to Dismiss is ripe for disposition.[1]

For the reasons that follow, this Court will **GRANT** Defendants' Motion.

---

[1] While Plaintiffs did not file a brief in response to Defendants' Motion to Dismiss Plaintiffs' *Amended* "Class Action and ERISA Complaint" (ECF No. 27), the Court notes that Plaintiffs previously filed a brief in opposition to Defendants' Motion Dismiss Plaintiffs' (*Original*) "Class Action and ERISA Complaint." (*See* Plaintiffs' reply brief, ECF No. 16.) The Court is not required to review the original opposition brief — Plaintiffs mooted it when they filed their First Amended Complaint (ECF No. 26). However, after Plaintiffs missed the deadline to file a response to Defendants' pending motion to dismiss, the Court consulted Plaintiffs' first opposition brief in an attempt to give Plaintiffs the benefit of the doubt. But the brief was unhelpful.

## II.  Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 because Plaintiffs' claims are brought under the Employee Retirement Income Security Act ("ERISA"). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of Pennsylvania.

## III.  Background

### A.  Procedural History

Plaintiffs commenced this action on September 7, 2017 by filing a Complaint before this Court. (ECF No. 1.) Defendants filed their first Motion to Dismiss on November 13, 2017. (ECF No. 12.) However, prior to a decision on this first Motion to Dismiss, this Court granted Plaintiffs' request to file an Amended Complaint. (ECF No. 22.)

Plaintiffs filed their Amended Complaint on January 24, 2018. (ECF No. 26.) Plaintiffs' Amended Complaint is organized into six counts: (1) a claim under ERISA to recover overpayment for breach of fiduciary duty, by Mr. Patchell and Ms. Patchell; (2) a claim for loss of consortium by Ms. Patchell; (3) a claim for ERISA violations by the purported class of Plaintiffs; (4) a claim incorporating by reference Count I on behalf of the entire class of Plaintiffs; (5) a motion for a preliminary injunction on behalf of Mr. Patchell; and (6) a claim seeking disgorgement of profits by Mr. Patchell and the purported class of Plaintiffs. (*Id.* at 9-19.)

On February 9, 2018, Defendants filed the pending Motion to Dismiss Plaintiffs' Amended "Class Action and ERISA Complaint" and an accompanying Memorandum of Law in support thereof. (ECF Nos. 27, 28.) To date Plaintiffs' have neither responded to nor moved for an

extension of the deadline to respond to Defendants' Motion to Dismiss Plaintiffs' Amended "Class Action and ERISA Complaint."

## B. Plaintiffs' Allegations[2]

Mr. Patchell obtained a Life Insurance Policy Company of North America ("LINA") Disability Policy (the "Policy") through his employer. (ECF No. 26 at ¶ 6.) In February 2010, a judge determined that Mr. Patchell is permanently disabled. (*Id.* at ¶ 12.) Thereafter, Mr. Patchell began receiving short-term disability ("STD") benefits from LINA pursuant to his Policy. (*Id.* at ¶¶ 12-16.) At some unspecified point, Mr. Patchell began receiving long-term disability ("LTD") benefits under his Policy. (*Id.* at ¶ 35.)

Mr. Patchell's LTD benefit totaled $4,513.00 per month, which resulted in Mr. Patchell receiving a monthly check for $2,868.00.[3] (*Id.* at ¶ 17.) Of this monthly payment, $1721.40 went to Mr. Patchell and $1,147.60 went to Mr. Patchell's counsel as an attorney's fee. (*Id.* at ¶ 18.)

On January 7, 2016, LINA suspended all payments to Mr. Patchell after it determined that it had overpaid him because Mr. Patchell's monthly benefit did not take into account offsets due to Social Security benefits received by his children. (*Id.* at ¶ 23.) LINA "clawed back" these overpayments by withholding Mr. Patchell's future LTD payments under his Policy. (*Id.* at ¶¶ 19, 23, 24, 41.)

Mr. Patchell had previously disclosed his children's Social Security benefits to LINA on a questionnaire he completed prior to receiving STD benefits. (*Id.* at ¶ 24.)

---

[2] The facts contained in this section are derived from Plaintiffs' Amended Complaint (ECF No. 26). The Court accepts these facts as true for the sole purpose of deciding the motion to dismiss.
[3] The Amended Compliant does not explain the discrepancy between Mr. Patchell's monthly LTD benefit and the amount he receives by check each month.

3

## C. The Policy

Plaintiffs did not attach Mr. Patchell's Policy to their Amended Complaint. However, the Defendants attached the Policy to their motion to dismiss. (*See* ECF No. 28-1.)

### 1. The Court May Consider the Policy at the Motion to Dismiss Stage

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. Appx. 92, 95 (3d Cir. 2014) ("Generally, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.") (internal citations omitted).

"However, an exception to the general rule is that a 'document *integral to or explicitly relied upon* in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'"[4] *Schmidt*, 770 F.3d at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original); *see also Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (stating that a court deciding a 12(b)(6) motion may consider "document[s] *integral to or explicitly relied upon* in the complaint") (emphasis in original) (internal citations omitted).

"Documents are integral when the plaintiff's claims are based on the document." *Hearbest, Inc. v. Adecco USA*, No. 13CV1026, 2013 WL 4786232, at *3 (W.D. Pa. Sept. 6, 2013) (quoting *In re*

---

[4] "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here the plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Schmidt*, 770 F.3d 241 at 249 (internal citations omitted).

4

*Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993)); *Ayco Co., L.P. v. Lipton*, No. 12CV0712, 2012 WL 3746193, at *3 (W.D. Pa. Aug. 29, 2012); *Langweiler v. Borough of Newtown*, No. CIV..A 10-3210, 2011 WL 1809264, at *5 (E.D. Pa. May 12, 2011); *Apple Am. Grp., LLC v. GBC Design, Inc.*, No. CV 3:15-325, 2018 WL 948772, at *10 (W.D. Pa. Feb. 15, 2018) (Gibson, J.)

The Court finds that the Policy is integral to Plaintiffs' Amended Complaint. All of Plaintiffs' claims are based on their central allegation that LINA improperly suspended Mr. Patchell's LTD benefits owed to him under the Policy. (*See, generally,* ECF No. 26.) Moreover, the Amended Complaint references Mr. Patchell's Policy on numerous occasions. (*See, e.g., id.* at ¶¶ 6, 10, 11, 19, 20, 21, 22.) Thus, the Policy is "integral to" Plaintiffs' Amended Complaint. Therefore, the Court may consider the Policy at the 12(b)(6) stage without converting Defendants' motion to dismiss into a motion for summary judgment. *Schmidt*, 770 F.3d at 249.

### 2. Policy Terms

Patchell's Policy provides for "Disability Benefits if an Employee becomes Disabled while covered under this Policy." (ECF No. 28-1 at 7.) Under the Policy, LINA "may reduce the Disability Benefits by the amount of . . . Other Income Benefits" that the beneficiary receives. (*Id.* at 8.) The Policy defines "Other Income Benefits" as:

> any amounts received (or assumed to be received) by the Employee or his or her dependents under: . . . any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on his or her own behalf or for his or her dependents; or which his or her dependents receive (or are assumed to receive*) because of his or her entitlement to such benefits.

(*Id.*) The Policy defines "Dependents" to "include any person who receives (or is assumed to receive*) benefits under any applicable law because of an Employee's entitlement to benefits." (*Id.*)

5

The Policy's "Assumed Receipt of Benefits" provision explains that LINA "will assume the Employee (or his or her dependents, if applicable) are receiving benefits for which they are eligible from Other Income Benefits." (*Id.* at 9.) The Policy provides that LINA "will reduce the Employee's Disability Benefits by the amount from Other Income Benefits it estimates are payable to the Employee and his or her dependents." (*Id.*)

The "Recovery of Overpayment" provision gives LINA "the right to recover any benefits it has overpaid" by using "any or all" of the following methods: (1) "request[ing] a lump sum payment of the overpaid amount;" (2) "reduc[ing] any amounts payable" under the Policy; and (3) "tak[ing] any appropriate collection activity" otherwise available. (*Id.*)

## IV. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court reviewing the sufficiency of a complaint must take three steps.[5] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.

---

[5] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

6

Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V. Discussion

Defendants move to dismiss all of Plaintiffs' claims. The Court will examine Defendants' arguments with respect to each of Plaintiffs' claims.

### A. The Court Will Dismiss Plaintiffs' Claim of Breach of Fiduciary Duty Under ERISA

Plaintiffs' Amended Complaint is impressively opaque and incredibly difficult to decipher. However, Plaintiffs appear to assert three theories of breach of fiduciary duty under ERISA; (1) failure to reimburse Plaintiffs for attorney's fees, costs, and expert witness expenses incurred during the administrative appeals process (ECF No. 26 at ¶¶ 18(d)-(e); 39); (2) failure to hold a "*Montanile* Tracing Hearing" before suspending Mr. Patchell's LTD benefits (*id.* at ¶¶ 1-4; 18(y)); and (3) suspending Mr. Patchell's LTD benefits in violation of the Social Security Act ("SSA"), 42 U.S.C. § 407(a) (*id.* at ¶ 18(h)).

7

As explained below, the Court will **grant** Defendants' motion to dismiss Plaintiffs' breach of fiduciary claim in its entirety.

> 1. **Defendants Did Not Violate ERISA by Failing to Reimburse Plaintiffs for Attorney's Fees and Costs Incurred During the Administrative Appeals Process**

Under ERISA, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

In the Third Circuit, "the fees incurred during administrative proceedings prior to filing suit are unavailable under 29 U.S.C. § 1132(g)(1)." *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 313 (3d Cir. 2008); *see also Reg'l Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 732 (E.D. Pa. 2016) (stating that "entries related to the administrative process . . . are not properly included in the ERISA fee request."); *Howley v. Mellon Fin. Corp.*, No. CIV. 06-5992 FSH, 2011 WL 2600664, at *5 (D. N.J. June 27, 2011) (holding that, under *Hahnemman*, an ERISA plaintiff "is not entitled to payment of the fees incurred during the administrative review process."); *Killian v. Johnson & Johnson*, No. CIV. A. 07-4902 (GEB, 2009 WL 537666, at *19 (D. N.J. Mar. 4, 2009) (citing *Hahnemann* and holding that fees and costs incurred during the ERISA administrative review process are not recoverable).

Because Plaintiffs cannot recover attorney's fees, costs, and expert witness expenses incurred during the ERISA administrative review process, the Court will grant Defendants' motion to dismiss this component of Plaintiffs' ERISA breach of fiduciary claim.

8

## 2. Defendants Did Not Violate ERISA by Failing to Hold a *Montanile* Tracing Hearing Before Suspending Mr. Patchell's LTD Benefits

Under ERISA § 502, a fiduciary such as LINA may "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).

In *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016), the Supreme Court explored § 502(a)(3)'s "equitable relief" limitation. Specifically, the Court "consider[ed] what happens when a[n ERISA] participant obtains a settlement fund from a third party, but spends the whole settlement on nontraceable items." *Id.* at 655. In particular, the Court examined "whether a plan fiduciary can sue under [ERISA] § 502(a)(3) to recover from the participant's remaining [general] assets the medical expenses it paid on the participant's behalf." *Id.*

The Court answered that question in the negative, holding that "when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief.'" *Id.* The Court based its decision on traditional principles of equity,[6] holding that

---

[6] As the Supreme Court explained,

> Equitable remedies "are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing . . . rather than a right to recover a sum of money generally out of the defendant's assets." 4 S. Symons, Pomeroy's Equity Jurisprudence § 1234, p. 694 (5th ed. 1941) (Pomeroy). Equitable liens thus are ordinarily enforceable only against a specifically identified fund because an equitable lien "is simply a right of a special nature over the thing . . . so that the very thing itself may be proceeded against in an equitable action." *Id.*, § 1233, at 692; see also Restatement of Restitution § 215, Comment a, p. 866 (1936) (Restatement) (enforcement of equitable lien requires showing that the defendant "still holds the property or property which is in whole or in part its product"); 1 D. Dobbs, Law of Remedies § 1.4, p. 19 (2d ed. 1993) (Dobbs) (similar) . . .

9

if the plaintiff had dissipated the entirety of his settlement proceeds, the ERISA fiduciary's attempts to recover the settlement proceeds from the plaintiff's general assets constituted a legal—not an equitable—remedy, which would violate ERISA's equitable relief limitation. *Id.* at 659. The Supreme Court remanded the case to the district court to determine whether the settlement assets had been completely dissipated, which would also allow the Court to ascertain whether the relief sought was equitable.

*Montanile* does not apply here. First, *Montanile*'s holding appears to be limited to situations where an ERISA fiduciary attempts to recover settlement funds. *See Montanile*, 136 S. Ct. at 655 ("hold[ing] that, when a participant dissipates the whole *settlement* on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief.'") (emphasis added). This case does not involve settlement funds—it involves overpayments. Plaintiffs failed to present this Court with a single case holding that *Montanile* applies to overpayments, and this Court is aware of none.

---

> If, instead of preserving the specific fund subject to the lien, the defendant dissipated the entire fund on nontraceable items, that complete dissipation eliminated the lien. Even though the defendant's conduct was wrongful, the plaintiff could not attach the defendant's general assets instead. Absent specific exceptions not relevant here, "where a person wrongfully dispose[d] of the property of another but the property cannot be traced into any product, the other . . . cannot enforce a constructive trust or lien upon any part of the wrongdoer's property." Restatement § 215(1), at 866 (emphasis added) . . .
>
> In sum, at equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach the defendant's general assets instead because those assets were not part of the specific thing to which the lien attached. This rule applied to equitable liens by agreement as well as other types of equitable liens.

*Id.* at 658-59.

10

The Court is also unpersuaded by Plaintiffs' assertion that LINA's recoupment of overpaid benefits violates § 1132(a)(3)'s "equitable relief" limitation. Several courts have held that recouping overpaid benefits by withholding future benefits when the language of the plan provides for this remedy does not violate § 1132(a)(3) because it does not involve a "civil action." *See Palmer v. Johnson & Johnson Pension Plan*, No. CIV.A.09-572(JLL), 2009 WL 3029794, at *3 (D. N.J. Sept. 17, 2009) (holding that plan did not violate ERISA by withholding future benefits to recoup overpayments); *Northcutt v. Gen. Motors Hourly-Rate Employees Pension Plan*, 467 F.3d 1031, 1036-37 (7th Cir. 2006) (holding that plan did not violate ERISA by withholding benefits to recoup overpayments, noting that § 1132(a)'s "equitable relief" limitation "speaks only to the availability of 'a civil action[,]'" and observing that "[ERISA's] statutory language, although precise in defining judicial remedies, simply does not address the possibility of a recoupment device to recapture overpayments by the plan."); *Shaffer v. Rawlings Co.*, 424 F. App'x 422, 425 (6th Cir. 2011) (holding that § 1132(a)'s "equitable relief" limitation "pertains only to *judicial remedies*—the kind of relief that may be sought in judicial proceedings and by whom. Nowhere does it speak to substance, either as to the validity of contractual provisions in general or subrogation and reimbursement clauses in particular.") (emphasis added); *Glaze v. Sysco Corp.*, No. 105CV-1546-DFH-WTL, 2007 WL 1701931, at *5 (S.D. Ind. June 11, 2007) (rejecting plaintiff's contention that plan violated ERISA by withholding monthly disability benefits to recoup overpayments).

As in the cases cited above, Defendants have not brought a civil action against Plaintiffs. Rather, Defendants merely withheld benefits to recoup overpayments, an extra-judicial remedy explicitly provided for by the Policy. (ECF No. 28-1 at 9.)

Accordingly, the Court rejects Plaintiffs' contention that Defendants violated ERISA by withholding future benefits to recoup past overpayments. Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' claim that Defendants improperly withheld future payments without first determining whether the overpayments could be traced.

> 3. **Defendants Did Not Violate ERISA or the SSA by Offsetting Mr. Patchell's LTD Benefits by the Disability Benefits his Dependents Are Eligible to Receive**

ERISA fiduciaries may offset LTD benefits by the amount of Social Security benefits paid to policyholders and their dependents. *Lamb v. Connecticut Gen. Life Ins. Co.*, 643 F.2d 108, 112 (3d Cir. 1981) (holding that "total family income, including dependents' Social Security allotments, rather than just individual income, may be considered when calculating benefit levels under public or private support programs."); *Fortune v. Grp. Long Term Disability Plan for Employees of Keyspan Corp.*, 391 F. App'x 74, 79 (2d Cir. 2010) (holding that district court "correctly allowed" ERISA fiduciary to offset the plaintiff's LTD benefits by the amount of Social Security disability benefits received by her children); *Fortelney v. Liberty Life Assur. Co. of Boston*, 790 F. Supp. 2d 1322, 1343 (W.D. Okla. 2011) (finding that ERISA fiduciary "was authorized to require the offset of social security benefits paid to a policyholder and any dependents against the amounts payable to the policyholder under the LTD policy.")

Mr. Patchell's Policy explicitly allows LINA to offset Mr. Patchell's Disability Benefits by the amount of Social Security disability benefits that his children actually receive or are assumed to receive. (ECF No. 28-1 at 8.) Obviously, LINA is well-within its contractual rights to offset Mr. Patchell's Disability Benefits in this way. Accordingly, LINA's offset violates neither ERISA nor

the SSA. Therefore, the Court will grant Defendants' motion to dismiss Plaintiffs' improper offset claim.

### B. The Court Will Grant Defendants' Motion to Dismiss Ms. Patchell's Loss of Consortium Claim

Ms. Patchell alleges that "as a consequence of the wrongful breach of fiduciary duties, Mr. Patchell has diminished performance of his duties as a husband." (ECF No. 26 at ¶ 51.) Specifically, Ms. Patchell asserts that Mr. Patchell "has grown uncommunicative and exhibited a marked disinclination to express intimacies or libidinous joy with his wife." (*Id.* at ¶ 52.)

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Accordingly, "ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

"ERISA's express preemption provision provides that ERISA's regulatory structure 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA].'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting 29 U.S.C. § 1144(a)). The Third Circuit has explained that "'[r]elate to' has always been given a broad, common-sense meaning, such that a state law 'relates to an employee benefit plan . . . if it has a connection with or reference to such a plan.'" *Menkes*, 762 F.3d at 293-94 (quotation marks omitted) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). Furthermore, "state law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State . . . ." *Menkes*, 762 F.3d at 294 (quoting 29 U.S.C. § 1144(c)(1))).

In other words, "state law" is "not limited to state laws specifically designed to affect employee benefit plans . . . ." *Menkes*, 762 F.3d at 294 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)).

District Courts in the Third Circuit have held that ERISA pre-empts loss of consortium claims that are based on an underlying allegation that the ERISA fiduciary improperly administered plan benefits. *Smith v. Prudential Health Care Plan Inc.*, No. CIV. A. 97-891, 1997 WL 297096, at *4 (E.D. Pa. May 27, 1997) (granting motion to dismiss loss of consortium claim because plaintiff's "loss of consortium claim depends upon the allegation that [the ERISA fiduciary] improperly administered plan benefits. Thus, this claim . . . relates to an ERISA plan [and is pre-empted]."); *LaMonica v. Guardian Life Ins. Co. of Am.*, No. CIV.A. 96-6020(JEI), 1997 WL 80991, at *6 (D. N.J. Feb. 20, 1997) (granting motion to dismiss plaintiff's loss of consortium claim because it "related to the processing" of plaintiff's ERISA benefits and thus was pre-empted); *Campbell v. Emery World Wide*, No. CIV. A. 93-6568, 1994 WL 519708, at *3 (E.D. Pa. Sept. 22, 1994) (dismissing loss of consortium claim as pre-empted by ERISA); *Balush v. Indep. Blue Cross*, No. CIV.A 96-7303, 1996 WL 741960, at *2 (E.D. Pa. Dec. 17, 1996) (granting motion to dismiss loss of consortium claim as pre-empted by ERISA).

While, to the best of this Court's knowledge, the Third Circuit has not faced the issue, other federal courts of appeals have held that ERISA pre-empts state law loss of consortium claims. *See Kidneigh v. UNUM Life Ins. Co of Am.*, 345 F.3d 1182, 1189 (10th Cir. 2003) (holding that ERISA pre-empted spouse's loss of consortium claim and explaining that "[i]f the loss of consortium claim is derived from the [other spouse's bad faith] ERISA claim, then the loss of consortium claim is best characterized as a state law claim pre-empted by ERISA."); *Mayeaux v.*

14

*Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 430 (5th Cir. 2004) (affirming district court's holding that ERISA pre-empted loss of consortium claim).

In accordance with the persuasive authority cited above, the Court finds that ERISA pre-empts Ms. Patchell's loss of consortium claim. While the Court is skeptical that Ms. Patchell asserted a plausible claim for loss of consortium — she alleges that Mr. Patchell lost sexual interest in her after Defendants improperly managed his LTD benefits, causing her to experience decreased libidinal joy — the Court need not evaluate the plausibility of Ms. Patchell's claim because her claim clearly "relates to" Mr. Patchell's Policy and is therefore pre-empted by ERISA. Accordingly, the Court will grant Defendants' motion to dismiss Ms. Patchell's claim for loss of consortium.

### C. The Court Will Grant Defendants' Motion to Dismiss Plaintiffs' Remaining Claims

As noted above, the Court will grant Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim under ERISA (Count I) and Ms. Patchell's loss of consortium claim (Count II). Therefore, the Court will also grant Defendants' motion to dismiss Plaintiffs' purported class action claims (Counts III and IV) and disgorgement claim (Count VI), because these claims are based on the allegations in Counts I and II.

The Court will also grant Defendants' motion to dismiss Mr. Patchell's motion for a preliminary injunction (Count V); obviously, Mr. Patchell cannot establish a likelihood of success on the merits of claims that this Court already dismissed.

## VI. Conclusion

For the reasons stated above, the Court **grants** Defendants' motion to dismiss in its entirety. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY PATCHELL, *on his own behalf and on behalf of all others similarly situated*, and AMANDA PATCHELL, *his wife*, | ) ) ) ) ) | Case No. 3:17-cv-161<br><br>JUDGE KIM R. GIBSON |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, and LIFE INSURANCE COMPANY OF AMERICA, | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

NOW, this 28th day of March 2018, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Amended "Class Action and ERISA Complaint" (ECF No. 27), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendants' Motion (ECF No. 27) is **GRANTED**. The Clerk is directed to close this case.

BY THE COURT

*[signature]*

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE